THE TOWN COUNCIL OF MONTCLAIR v. CHARLES J. BAX-
TER, STATE SUPERINTENDENT.

Argued November 18, 1907—Decided February 24, 1908.

1.  Under section 76 of the School law (*Pamph. L.* 1903, *second
    special session*), when the board of school estimate have fixed
    and determined the amount necessary for the purchase of land
    and erection of a schoolhouse, it is mandatory upon the body hav-
    ing the power to make appropriations of money raised by tax to
    cause the amount to be raised by tax, or to borrow the same and
    secure its repayment by the issue of bonds.
2.  When the body having power to make appropriations of money
    raised by tax fails to provide for the amount fixed and deter-
    mined by the board of school estimate, a controversy has arisen
    under the school laws, and the remedies by appeal to the state
    superintendent of public instruction and the state board of edu-
    cation must be exhausted before recourse is had to the courts.

On *certiorari.*

Before Justices SWAYZE and TRENCHARD.

For the prosecutor, *Robert M. Boyd, Jr.*

For the board of education, *Charles H. Hartshorne.*

For the state superintendent of public instruction, *Robert
H. McCarter,* attorney-general.

The opinion of the court was delivered by

SWAYZE, J.  The town council of Montclair refused to ap-
propriate $197,500, which the board of school estimate is
supposed to have fixed and determined as the amount neces-
sary for the purchase of land and building of a new grammar
school.  The state superintendent° of public instruction de-
cided that this refusal was erroneous, and a violation of
section 14 of the School law.  Thereupon the writ of *certio-
rari* was allowed.

The state superintendent is clothed with the authority to decide all controversies and disputes that shall arise under the school laws, subject to appeal to the state board of education. *Pamph. L.* 1903 (*second special session*), *p.* 7, § 10. We have held that the prerogative writs of the state should not be awarded until the remedies provided by the School law have been exhausted. *Stockton* v. *Board of Education,* 43 *Vroom* 80. If this controversy arose under the school laws the writ was prematurely allowed, since there had been no appeal to the state board of education. This question was argued as if its solution depended upon whether it was mandatory upon the council, under section 76 of the act, to appropriate the amount fixed and determined by the board of school estimate, and it is this question only which we are now called upon to decide.

We think section 76 is mandatory in its terms. The fact that it uses the word "may," instead of "shall," is, of course, not conclusive. That the word "shall" is used in section 75, which provides for current expenses, and the word "may" in section 76, which provides for new schoolhouses, would be a persuasive argument against giving a mandatory force to section 76, if there were nothing to explain the change of words. There is, however, an apparent reason for the change. Money for current expenses is properly required to be included in the annual budget and raised by taxation, but an option is given to the council to raise money for the extraordinary expense of new buildings, either by including the sum in the annual budget or borrowing the amount by means of an issue of bonds. This alternative makes necessary the use of the permissive "may," but such use does not indicate that the council may adopt a third course, not mentioned in the act, and refuse to make any appropriation at all. In other respects the two sections are quite similar. Each authorizes the board of school estimate to fix and determine the amount necessary for the purposes of that section. These words, "fix and determine," seem to us intended to place the power of determining the amount in the board of school estimate without

its being subject to review by the town council. The board of estimate is an intermediate body between the board of education, which seeks the appropriation to spend, and the town council, which has general control of the financial affairs of the municipality. Both bodies are represented in the board of estimate.

It is argued that if the certificate of the board of estimate is made too late to enable the necessary amount to be raised by taxation within the year, the council will have no option except to issue bonds, since it cannot bind a succeeding council to include the amount in the tax levy of a succeeding year. But the possible inconvenience is more than balanced by the inconvenience which would result from a deadlock between the two boards such as this case presents, and is not a very likely contingency in view of the fact that two members out of five on the board of estimate are members of the council and a third is the mayor or chief executive officer.

It is also argued that one construction makes it possible for the board of estimate to require an extravagant expenditure. Such a result is always possible, no matter in what board or officers power may be vested. The remedy is with the voters of the municipality.

We think, therefore, that this case involved a controversy arising under the School law; that the state superintendent had jurisdiction; that the prosecutors should have exhausted their remedy by appeal to the state board of education, and that, as they failed to do so, the *certiorari* was allowed prematurely. This leads, however, not to an affirmance of the decision of the state superintendent, but to a dismissal of the writ.