26 N.J. 172 (1958)
139 A.2d 110
THE CENTRAL RAILROAD COMPANY OF NEW JERSEY, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AARON K. NEELD, DIRECTOR, DIVISION OF TAXATION IN THE DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, DEFENDANT, AND CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
THE PENNSYLVANIA RAILROAD COMPANY, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, PLAINTIFF-RESPONDENT,
v.
AARON K. NEELD, DIRECTOR, DIVISION OF TAXATION, ETC., DEFENDANT, AND CITY OF JERSEY CITY, CITY OF HOBOKEN, CITY OF CAMDEN, AND TOWN OF SECAUCUS, ALL MUNICIPAL CORPORATIONS OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
LEHIGH VALLEY RAILROAD COMPANY, A CORPORATION OF THE STATE OF PENNSYLVANIA, PLAINTIFF-RESPONDENT,
v.
AARON K. NEELD, DIRECTOR, DIVISION OF TAXATION, ETC., DEFENDANT, AND CITY OF JERSEY CITY, AND CITY OF NEWARK, MUNICIPAL CORPORATIONS, DEFENDANTS-APPELLANTS.
THE DELAWARE, LACKWANNA AND WESTERN RAILROAD COMPANY, A CORPORATION, PLAINTIFF-RESPONDENT,
v.
AARON K. NEELD, DIRECTOR, DIVISION OF TAXATION, ETC., DEFENDANT, AND CITIES OF HOBOKEN, JERSEY CITY AND NEWARK, AND TOWN OF SECAUCUS, MUNICIPAL CORPORATIONS, DEFENDANTS-APPELLANTS.
ERIE RAILROAD COMPANY, A CORPORATION OF THE STATE OF NEW YORK, PLAINTIFF-RESPONDENT,
v.
AARON K. NEELD, DIRECTOR OF THE DIVISION OF TAXATION, ETC., DEFENDANT, AND CITY OF JERSEY CITY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, CITY OF HOBOKEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, TOWNSHIP OF WEEHAWKEN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND TOWN OF SECAUCUS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS-APPELLANTS.
The Supreme Court of New Jersey.
Argued January 6, 1958.
Argued January 7, 1958.
Decided February 17, 1958.
*174 Messrs. Leo Rosenblum and Herbert H. Fine argued the causes for the appellants (Mr. Ezra L. Nolan, Corporation Counsel of the City of Jersey City, attorney for defendant-appellant City of Jersey City; Mr. James Rosen, attorney for defendant-appellant Township of Weehawken; Mr. *175 David Pollack, attorney for defendant-appellant Town of Secaucus; Mr. Vincent P. Torppey, Corporation Counsel, attorney for defendant-appellant City of Newark; Mr. Norman Heine, attorney for defendant-appellant City of Camden; Mr. Herbert H. Fine, attorney for City of Hoboken).
Messrs. Raymond J. Lamb, Joseph C. Glavin and Augustus Nasmith argued the causes for the respondents (Messrs. Emory, Langan, Lamb & Blake, attorneys for plaintiffs-respondents Erie Railroad Company and Lehigh Valley Railroad Company).
The opinion of the court was delivered by JACOBS, J.
These are five consolidated appeals from interlocutory orders of the Law Division denying the defendants' motions to dismiss the complaints filed by the plaintiff railroad companies. Leave to appeal was granted by the Appellate Division (R.R. 2:2-3(a)) and we certified on our own motion (R.R. 1:10-1(a)).
Prior to December 10, 1956 the defendant Aaron K. Neeld, Director, Division of Taxation in the Department of the Treasury, made his preliminary determinations of the true value of various Class I and Class II properties of the plaintiff railroads, including properties located in the defendant municipalities. See R.S. 54:29A-17. In accordance with R.S. 54:29A-18 petitions were filed on January 14, 1957 by all of the railroads alleging that the valuations were excessive and discriminatory, and by most of the municipalities alleging that the valuations were below true value. On January 29, 1957 hearings were held by the Director and the railroads stressed that he was obligated to eliminate discrimination in his Class II railroad assessments by reducing the level of assessments "to the general ratio of assessments in the taxing districts." In response the Director indicated that, under the law as he then conceived it, he was in all events required to assess Class II properties at true value. On March 5, 1957 the railroads *176 filed actions in the Law Division in which they sought (1) a declaration that the Director had the power and duty to assess their Class II properties according to the "average ratio of assessed to true value" employed by the defendant municipalities in assessing other real property within their borders, and (2) an order enjoining the Director from certifying his final valuations until he had eliminated the alleged discrimination between the Class II properties and other real property. In these actions there were motions for summary judgment and for dismissal of the complaints; on March 13, 1957 the Law Division dismissed the complaints in an order which set forth that, since the Supreme Court had on March 11, 1957 decided in Delaware, Lackawanna and Western R.R. Co. v. Neeld, 23 N.J. 561 (1957), that the Director had jurisdiction to make his final assessment at less than true value when necessary to prevent discrimination, it was unnecessary for the Law Division so to declare.
On March 15, 1957 the Director certified his 1957 assessments against the railroads' Class II properties in the defendant municipalities and filed findings and conclusions in which he recognized the Supreme Court's ruling that he was empowered and required to make his final assessments of Class II railroad property "at the common level of assessment prevailing in the respective taxing districts," but found that at no time during the hearings before him had any proof been adduced to show such common level of assessment. He pointed out that the Supreme Court had held that the average assessment ratio as shown on the Director's Table of Equalized Valuations (R.S. 54:1-35) was not synonymous with and did not represent the common level of assessment in the taxing district and that the railroads had failed to introduce any proof as to true value or common level of assessment and that no yardsticks were presently available from which he could make a proper determination of common level of assessment. See Delaware, Lackawanna and Western R.R. Co. v. Neeld, supra, 23 N.J. at 573. Cf. Switz v. Middletown Twp., 23 N.J. 580, 594 *177 (1957); Jat Company, Inc. v. Division of Tax Appeals, 47 N.J. Super. 571, 581 (App. Div. 1957); North Bergen Twp. v. Venino, 45 N.J. Super. 143, 147 (App. Div. 1957). After referring to the public need for avoiding delay in his final certification and the availability of complete review in the Division of Tax Appeals (R.S. 54:29A-31), he certified his valuations of Class II railroad properties at true value. In due course the railroads filed appeals to the Division of Tax Appeals from the Director's action and those appeals are now pending. In addition the railroads filed their present complaints in the Law Division seeking final judgments (1) declaring that the 1957 assessments against their Class II properties constitute illegal and unconstitutional discrimination against them and are null and void, and (2) ordering the Director to ascertain the general or common ratio of locally assessed properties in the municipalities and reducing his 1957 assessment to such general or common standard of assessment. The defendant municipalities moved to dismiss the complaints, but their motions were denied and their present appeal is from that action. In support of their appeal they now urge (1) that the Law Division's dismissal of the plaintiffs' earlier complaints on March 13, 1957 is res judicata and precludes their present actions; (2) that the plaintiffs have failed to exhaust their administrative appeal to the Division of Tax Appeals as required by R.R. 4:88-14; and (3) that in any event the plaintiffs' actions should have been brought under R.R. 4:88-8 in the Appellate Division rather than in the Law Division.
We reject the appellants' contention that the dismissal order of March 13, 1957 is res judicata and in itself precludes the railroads' present actions. The doctrine of res judicata is well designed to preclude the relitigation of issues which have been fairly and finally determined, but it ordinarily does not come into play where the parties have not had an adjudication on the ultimate merits. See Meier Credit Co. v. Yeo, 129 N.J.L. 82, 86 (E. & A. 1942); Longo v. Reilly, 35 N.J. Super. 405, 410 (App. *178 Div. 1955). Cf. McCarthy v. State, 1 Utah 2d 205, 265 P.2d 387, 49 A.L.R.2d 1031 (1953); 30 Am. Jur. Judgments, §§ 208, 209 (1940). The dismissal order of March 13 did not determine any of the ultimate merits of the present tax controversy. The earlier complaints presented somewhat different issues and were dismissed because the trial court considered that in view of the March 11 pronouncement of the Supreme Court in Delaware, Lackawanna and Western R.R. Co. v. Neeld, supra, there was then no just occasion for the declaratory and injunctive relief being sought by the railroads from the Law Division. The municipalities' motions for dismissal had included a ground based on the doctrine of exhaustion of administrative remedies, but there is nothing in the record to suggest that the dismissals were in anywise rested on that ground. Although we are satisfied that res judicata principles have no real pertinence, the appellants may of course urge here, as they did below, that the present complaints should be dismissed because the railroads failed to exhaust the administrative appeal which is admittedly available to them under R.S. 54:29A-31 and is actually pending before the Division of Tax Appeals.
The doctrine that a litigant must first exhaust his administrative remedies before he seeks judicial review is widely recognized and has been the subject of extended discussion. See Davis, Administrative Law 614 (1951); Parker, Administrative Law 117 (1952); Berger, "Exhaustion of Administrative Remedies," 48 Yale L.J. 981 (1939); Stason, "Timing of Judicial Redress from Erroneous Administrative Action," 25 Minn. L. Rev. 560 (1941); Comment, "Exhaustion of Administrative Remedies," 39 Cornell L.Q. 273 (1954). Cf. Ward v. Keenan, 3 N.J. 298, 302 (1949); Nolan v. Fitzpatrick, 9 N.J. 477, 484 (1952); Waldor v. Untermann, 10 N.J. Super. 188, 190 (App. Div. 1950). In the federal sphere the doctrine has been said to date back to the advent of the Interstate Commerce Commission in 1887 (Ward v. Keenan, supra, 3 N.J., at 302) and Dundee Mortgage Trust Invest. Co. v. Charlton, *179 32 F. 192 (C.C.D. Ore. 1887) and Altschul v. Gittings, 86 F. 200 (C.C.D. Ore. 1898), have been cited as its earliest manifestations. See Berger, supra, 48 Yale L.J., at 981, n. 1. There the federal courts declined to grant relief to taxpayers who complained about excessive and discriminatory tax assessments without having taken the administrative appeals available to them. Similar tax assessment cases of equal or even greater vintage may readily be found in our own state reports. See Appelget v. Pownell, 49 N.J.L. 169 (Sup. Ct. 1886); State, Hall v. Snedeker, 42 N.J.L. 76 (Sup. Ct. 1880); State, Young v. Parker, 34 N.J.L. 49 (Sup. Ct. 1869); State v. Powers, 24 N.J.L. 406 (Sup. Ct. 1854); The State v. Danser, 23 N.J.L. 552 (Sup. Ct. 1852).
The doctrine has been freely applied in New Jersey not only in tax assessment cases where administrative appeals have been available from earliest times (see Laws of New Jersey 1703-1820, at p. 308) but in many other situations where adequate administrative appeals were provided by the Legislature. In Jefferson v. Board of Education, 64 N.J.L. 59 (Sup. Ct. 1899), the relator sought a writ of mandamus to compel action by the Board of Education of Atlantic City to admit his son to the Indiana Avenue school. The court denied the relator's application on the ground that he was obliged to exhaust the administrative appeals provided in the school law of the State before seeking judicial relief. In the course of its opinion the court pointed out that the legislative branch had wisely provided a chain of administrative tribunals which was empowered to deal with school controversies and that the judicial branch should, in the exercise of its discretion, generally stay its hand pending completion of the statutory steps on review. Many later cases under the school law have taken the same approach. See Draper v. Comm'rs. of Public Instruction, 66 N.J.L. 54 (Sup. Ct. 1901); Stockton v. Board of Education, 72 N.J.L. 80 (Sup. Ct. 1905); Montclair v. Baxter, 76 N.J.L. 68 (Sup. Ct. 1908); Ridgway v. Upper Freehold Bd. Education, 88 N.J.L. 530 (Sup. Ct. 1916). *180 Cf. Koven v. Stanley, 84 N.J.L. 446 (Sup. Ct. 1913); Waldor v. Untermann, supra.
In Lutz v. Kaltenbach, 101 N.J.L. 316 (Sup. Ct. 1925), the relators sought a writ of mandamus to compel the issuance of a permit by a building inspector; the court denied relief, pointing out that the relators should first "exhaust their remedy" by taking their appeal to the board of adjustment established under the zoning law. In Matthews v. Asbury Park, 113 N.J.L. 205 (Sup. Ct. 1934), the court denied an application for writ of certiorari to review the issuance of a liquor license; in the course of its opinion the former Supreme Court expressed the view that the "appellate provisions" of the Alcoholic Beverage Control Act should have been exhausted before judicial relief was sought. In Jamouneau v. Newark, 132 N.J.L. 117 (Sup. Ct. 1944), the court dismissed a writ of certiorari which had been allowed to review the 1944 municipal budget for Newark; the budget had been approved by the Commissioner of Local Government but no application had been made to the State Board to review the Commissioner's approval. The court took the position that the case before it was one where all of the statutory appeals "must be pursued before recourse to the courts" and quoted approvingly from Florenzie v. East Orange, 88 N.J.L. 438 (Sup. Ct. 1916), where the court declined to review the validity of an assessment for benefits because the applicant for the writ of certiorari had failed to exhaust his available statutory appeal.
The doctrine of exhaustion of administrative remedies was applied in the foregoing cases as a rule of orderly procedure which embodied due and deferential regard for the legislative wisdom and policy in providing expert administrative review tribunals to deal with the specialized fields entrusted to them. It was not viewed as an absolute or jurisdictional rule and, when the interests of justice so required, was departed from by the immediate judicial granting of prerogative writ relief. See Lane v. Bigelow, 135 N.J.L. 195, 200 (E. & A. 1947); Redcay v. State Board of Education, 128 *181 N.J.L. 281, 284 (Sup. Ct. 1942); Conaway v. Atlantic City, 107 N.J.L. 404, 408 (Sup. Ct. 1931). Cf. Davis, "Administrative Remedies Often Need Not Be Exhausted," 19 F.R.D. 437, 487 (1957). When the prerogative writs were superseded in 1948 they were replaced by the procedure embodied in R.R. 4:88 which expressly retained the exhaustion-of-remedies doctrine; thus R.R. 4:88-14 has at all times provided that "except where it is manifest that the interests of justice require otherwise, proceedings under Rule 4:88 shall not be maintainable, so long as there is available judicial review to a county court or inferior tribunal or administrative review to an administrative agency or tribunal, which has not been exhausted." In the instant matter the proceedings by the railroads in the Law Division were admittedly instituted under R.R. 4:88 without prior exhaustion of the available administrative appeal to the Division of Tax Appeals; R.R. 4:88-14 must consequently be applied to dismiss their actions unless there is a manifest showing that the interests of justice require otherwise. No such showing appears and, indeed, all the pertinent considerations seem to us to point to the contrary. See Delaware, Lackawanna and Western R.R. Co. v. Neeld, supra, 23 N.J., at 575; Delaware, L. & W.R. Co. v. City of Hoboken, 10 N.J. 418, 424 (1952).
The Director found that the factual proofs before him were insufficient to establish any illegal discrimination within the principles expressed in Delaware, Lackawanna and Western R.R. Co. v. Neeld, supra. Accordingly, he assessed the Class II properties at true value and his assessment, subject to upsettal on review, is entitled to the presumption of correctness. See Delaware, L. & W.R.R. Co. v. City of Hoboken, 16 N.J. Super. 543, 549 (App. Div. 1951), reversed on other grounds, 10 N.J. 418 (1952). The railroads may, of course, have his assessment reviewed on appeal to the Division of Tax Appeals, and such appeal has in fact been taken. The authority of the Division to correct the assessment if it is excessive or if there has been illegal discrimination is clear. R.S. 54:29A-33; Gibraltar Corrugated *182 Paper Co. v. North Bergen Tp., 20 N.J. 213 (1955). The burden of introducing adequate valuation and other relevant testimony to establish excessive assessment or illegal discrimination will justly rest on the railroads for in this respect their situation does not differ from the ordinary appealing taxpayer who carries a similar burden. In view of the highly specialized nature of the agency involved and the factual issues presented, the rule requiring exhaustion of administrative remedies seems to be patently applicable. See Delaware, Lackawanna and Western R.R. Co. v. Neeld, supra, 23 N.J. at 575:
"And it is a corollary of the foregoing that the particular issue is peculiarly within the province of the administrative tribunals; and there is no occasion for judicial intervention before the exhaustion of the administrative remedies. They are wholly adequate, and the normal course in the circumstances. There is no discernible consideration of justice demanding that the administrative agencies be ousted of the jurisdiction for which they are specially fitted. The adjudicative function of the Division Director is established. The inquiry now concerns agency expertness and discretion, in the main. See Nolan v. Fitzpatrick, 9 N.J. 477 (1952); Ward v. Keenan, 3 N.J. 298 (1949); Swede v. City of Clifton, 22 N.J. 303 (1956)."
In their brief the railroads cite Baldwin Construction Co. v. Essex County Bd. of Taxation, 16 N.J. 329 (1954), as a "prime example" of taxpayers being permitted to obtain judicial relief from discriminatory assessments without exhausting their administrative remedies. There the lower courts had retained jurisdiction because they doubted or denied that the administrative tribunals had any jurisdiction to remedy the discriminatory assessments by reducing them to a common level of assessment below true value. See 28 N.J. Super. 110 (App. Div. 1953); 24 N.J. Super. 252 (Law Div. 1952). On appeal we determined the merits without passing upon the exhaustion-of-remedies doctrine or the extent of the jurisdiction of the administrative tribunals. Thereafter we held, in an opinion by Justice Burling (Gibraltar Corrugated Paper Co. v. North Bergen Tp., *183 supra), that the Division of Tax Appeals has the statutory power and duty to remedy a discriminatory assessment by reducing it to the common level of assessment below true value. The stated justification for the lower courts' retention of jurisdiction in Baldwin has thus been removed and its holding furnishes no current support for the railroads' position here. Similarly, we find nothing in the railroads' citation of Delaware, Lackawanna and Western R.R. Co. v. Neeld, supra, to aid their contention that the exhaustion-of-remedies doctrine should not be invoked; the pertinent language in that opinion, quoted earlier, points entirely the other way. There the Director had disavowed his legal power and obligation to correct an unconstitutionally discriminatory assessment by reducing it to the common level of assessment below true value; this court declared that he had such power and obligation and remanded the cause, significantly, not to the lower court but to the Director for further proceedings in conformity with the principles declared by the court. Here the Director has not disavowed his legal power and obligation but, recognizing the principles announced by the court, found the proofs of discrimination insufficient. Assuming, as the railroads stress (citing Orrok v. Parmigiani, 32 N.J. Super. 70, 74 (App. Div. 1954)), that their complaints in the Law Division are at this preliminary stage to be viewed sympathetically as asserting a proper claim of unconstitutional discrimination, they are still required to exhaust their pending appeal in the Division of Tax Appeals where testimony may be taken and their claim may justly be determined on the full record made there. If they obtain a decision in the Division which they consider favorable no further action on their part may be necessary; if, on the other hand, they consider themselves aggrieved by its decision they may then readily obtain judicial review on appeal to the Appellate Division in accordance with R.R. 4:88-8. See Werner Machine Co. v. Director of Division of Taxation, 17 N.J. 121 (1954); Fifth St. Pier Corp. v. City of Hoboken, 22 N.J. 326 (1956).
*184 The appellants raise a final procedural point which requires mention. They assert that, wholly apart from the doctrine of exhaustion of administrative remedies, judicial review of determinations by state administrative agencies or agents, such as the Director of the Division of Taxation, should be by appeal to the Appellate Division under R.R. 4:88-8 rather than as, in the instant matter, by complaint in the Law Division under R.R. 4:88-2. We consider their position to be sound, although under R.R. 1:27 (D) the litigant's choice of the wrong division will result in transfer and not in dismissal, at least where his judicial proceeding was originally instituted within the applicable time limitation. See Mathews v. Finley, 46 N.J. Super. 175, 177 (App. Div. 1957), certif. denied, 25 N.J. 283 (1957). Under former practice persons aggrieved by action or inaction of state and local administrative agencies could seek judicial relief by applying for one of the prerogative writs  certiorari, mandamus, quo warranto and prohibition. See Harris, Pleading and Practice in New Jersey (rev. ed. 1939), 713; 1 Bradner, New Jersey Law Practice §§ 528, 612, 634, 635 (1940). Cf. McKenna v. N.J. Highway Authority, 19 N.J. 270, 274 (1955). Litigants occasionally lost their just claims by choice of the wrong writs and this and other phases of the prerogative writ practice caused widespread dissatisfaction. See Ward v. Keenan, supra, 3 N.J., at 303. The writs were effectively superseded by the Constitution of 1947 which provided that, in lieu thereof, review, hearing and relief shall be afforded in the Superior Court "on terms and in the manner provided by rules of the Supreme Court." N.J. Const., Art. VI, Sec. V, par. 4 (1947).
In 1948 this court adopted its implementing rules which sought to avoid the problems of the prerogative writ practice and to provide simple and expeditious modes of judicial review from administrative action and inaction. The rules perpetuated none of the former procedural distinctions resting on the nature of the relief sought and their wholesome design was clear; they contemplated that every proceeding *185 to review the action or inaction of a local administrative agency would be by complaint in the Law Division (R.R. 4:88-2; see Baldwin Constr. Co. v. Essex Co. Bd. Taxation, 27 N.J. Super. 240, 242 (App. Div. 1953)) and that every proceeding to review the action or inaction of a state administrative agency would be by appeal to the Appellate Division. See R.R. 4:88-8, 4:88-10; Mathews v. Finley, supra; Petrucelli v. Dept. of Civil Service of N.J., 28 N.J. Super. 572 (App. Div. 1953). Cf. McBride v. McCorkle, 44 N.J. Super. 468, 473 (App. Div. 1957); In re Adinolfi, 43 N.J. Super. 262 (Law Div. 1957). It is true, as the railroads point out, that in Delaware, Lackawanna and Western R.R. Co. v. Neeld, supra, the initial proceeding for judicial review was in fact instituted by complaint in the Law Division rather than by appeal to the Appellate Division. But nothing in this court's opinion in that case may fairly be said to furnish any general support for that course of procedure which we now disapprove. See DeFazio v. Haven Savings and Loan Ass'n., 22 N.J. 511 (1956). Cf. Borough of Jamesburg v. Hubbs, 6 N.J. 578 (1951); Jersey City v. Tiene, 29 N.J. Super. 172 (App. Div. 1953).
Reversed, with direction that the complaints in the Law Division be dismissed in order that the appeals of the railroads now pending before the Division of Tax Appeals may proceed with reasonable promptitude.
HEHER, J. (concurring).
I concur in the judgment of reversal and in the reasoning as well. But I do not join in the disposition of the "final procedural point" relating to judicial review of "determinations by state administrative agencies or agents." This is wholly unnecessary to the decision here, and therefore obiter dictum in the constitutional field of appellate jurisdiction and procedure that, in the interest of sound judicial administration, should await a cause in which the questions are directly involved and essential to the determination of the issues raised.
There are certain basic preconditions to the exercise of the appellate jurisdiction. The Appellate Division of the *186 Superior Court is endowed with the appellate function and, as in the case of this court, "such original jurisdiction as may be necessary for the complete determination of any cause on review." 1947 Constitution, Article VI, section V, paragraph 3. Appeals may be taken to the Appellate Division "from the Law and Chancery Divisions of the Superior Court, the County Courts and in such other causes as may be provided by law." Ibid., Article VI, section V, paragraph 2. And subject to rules of this court, the Law Division and the Chancery Division of the Superior Court "shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief shall be granted in any cause so that the matters in controversy between the parties may be completely determined." Ibid., Article VI, section III, paragraph 4.
The appeal is taken by the service and filing of a notice of appeal, as prescribed by R.R. 1:2-8, 4:88-8; and the appeal must be timely to invest the appellate tribunal with jurisdiction. State v. Janiec, 6 N.J. 608 (1951), cert. den. 341 U.S. 955, 71 S.Ct. 1007, 95 L.Ed. 1376 (1951). And see Reconstruction Finance Corporation v. Prudence Securities Advisory Group, 311 U.S. 579, 61 S.Ct. 331, 85 L.Ed. 364 (1941).
The common reciprocal jurisdiction thus given the Law and Chancery divisions of the Superior Court was primarily designed to secure a complete determination of "all matters in controversy between the parties * * *." But this does not have reference to appeals, the exclusive province of the Appellate Division of the court; and so it would seem that R.R. 1:27D is not concerned with appeals. The concluding clause of the rule, "* * * and the action or cause shall then be proceeded upon as if it had been originally commenced in the proper court," makes clear its intended scope and purpose. Certainly, no one would contend that a judgment of the Law Division or the Chancery Division of the Superior Court is transferable to the Appellate Division for review without the intervention of the appellate process.
*187 Simplicity in procedure has its appeal. But informality cannot be allowed to set at naught the basic requirements of procedural due process for the security of persons and of property or constitutional principle and policy to that end. The appellate process is not as casual and as simple as that.
There is no occasion now to review the considerations of policy underlying the conditions made a sine qua non to the exercise of the appellate function. I would suggest the prudence of reserving the question for fuller examination in a case in which the point in its various facets is directly raised and argued.
The extraordinary jurisdiction formerly exercised by the prerogative writs is now vested in the Superior Court, to be afforded "* * * as of right, except in criminal causes * * *"; and the relief sought by the railroads here is in the nature of mandamus to compel the Director to determine the issue of equality vel non by the employment of the assessment ratios contained in the 1956 Table of Equalized Valuations. See Delaware, Lackawanna and Western R.R. Co. v. Neeld, 23 N.J. 561 (1957).
R.R. 4:88-8 concerns only the "final decision or action" of a "state administrative agency"; and R.R. 4:88-14 provides that, save where required in the "interests of justice," proceedings under Rule 4:88 "shall not be maintainable, so long as there is available judicial review to a county court or inferior tribunal or administrative review to an administrative agency or tribunal which has not been exhausted."
HEHER, J., concurring in result.
For reversal  Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS and PROCTOR  5.
For affirmance  None.