228 N.J. Super. 624 (1987)
550 A.2d 771
KOHLBRENNER RECYCLING ENTERPRISES, INC., PLAINTIFF,
v.
BURLINGTON COUNTY BOARD OF CHOSEN FREEHOLDERS, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided August 5, 1987.
*626 Mark J. Molz, Moorestown, for Plaintiff (Francis J. Hartman, Chartered, Attorney).
Michael J. Hogan, Burlington County Sol., for Defendant.
John A. Almeida, Medford, for Intervenor Occupational Training Center.
*627 John E. Harrington, Mount Holly, for Intervenor Delran Township (Schlesinger, Schlosser, Foy & Harrington, Attorney).
HAINES, A.J.S.C.
The County of Burlington adopted Recycling Plan Amendment # 86-3 to its Solid Waste Management Plan on August 13, 1986. The plan was approved by the Department of Environmental Protection ("DEP") on December 5, 1986.
The County's plan is a broad implementation of its Solid Waste Management Plan. It relies in part upon a contract executed on May 28, 1986, with the Occupational Training Center of Burlington County, Inc. ("OTC") for the actual collection and marketing of recycled materials. The agreement includes but is not limited to the recycling of newspapers, glass and cans.
Kohlbrenner, before and after January 1, 1986, has operated a recycling business, dealing with glass, cans, white goods, metals and tires. It serves a substantial number of municipalities through contractual arrangements. This suit, filed on June 11, 1987, seeks an order providing various forms of injunctive relief. Among other things, Kohlbrenner claims the right to be included in the County's recycling plan and requests the court to enjoin completion of the latter's new recycling facility in Delran Township, a facility now about one-third completed. The OTC and the Township of Delran have filed amicus briefs.
Kohlbrenner's principal argument rests upon the provisions of the Mandatory Recycling Program, L. 1987, c. 102 (the "act"), an act which became effective on April 20, 1987. Section 3 of the act requires every county to "accord priority consideration to persons engaging in the business of recycling ... on behalf of a county or municipality on January 1, 1986." Kohlbrenner, in that business on that date, claims correctly that the County's recycling plan fails to provide the required consideration. The County, however, argues that this court lacks jurisdiction, that *628 the suit is time-barred and that Burlington County is exempt from the priority requirement upon which Kohlbrenner relies.
This opinion responds to an order to show cause obtained by Kohlbrenner.

A. Jurisdiction

The County's jurisdictional argument, with which OTC agrees, is correct.
R.2:2-3(a)(2) establishes jurisdiction in the Appellate Division "... to review final decisions or actions of any State administrative agency or office...." The section of the act upon which Kohlbrenner relies provides: "Each district recycling plan ... shall accord priority consideration to persons engaged in the business of recycling...." The claimed consideration therefore must be provided in the plan itself. That plan was adopted by the County August 13, 1986.[1] The DEP approved the plan on December 5, 1986. It is the action of the DEP in approving the plan, which in fact does not give "priority consideration" to Kohlbrenner, that is the object of the present suit. That action cannot be bypassed by suing only the County. A challenge to the DEP is necessary; it has to be filed in the Appellate Division, not here. This court does not have jurisdiction.
A restraint against construction of the Delran Recycling Plant is also sought in this suit. That construction is part of the plan approved by the DEP. Furthermore, acquisition of the Delran property also received DEP approval on May 7, 1985. *629 Both of these DEP actions can be challenged only in the Appellate Division. Jurisdiction is there, not here.

B. The Triple Time Bar

An appeal to the Appellate Division pursuant to R.2:2-3(a)(2) should have been taken within 45 days from December 5, 1986, the date the DEP approved the recycling plan. This suit was not filed until June 11, 1987. N.J.S.A. 13:1E-23(f) requires that the commencement of an action to review the County's plan be brought within 30 days after its adoption in August 1986. This action was commenced long after that deadline had passed. Finally, R.4:69-6 requires a complaint in lieu of prerogative writ to be filed within 45 days from the date of the accrual of the cause of action. The within cause of action accrued either on August 13, 1986, or on December 5, 1986. The present complaint therefore comes much too late under three applicable rules of limitation.
Ordinarily, it would be permissible and proper to transfer this matter to the Appellate Division in order to solve the jurisdictional problem. R.1:13-4. Since the complaint has not been timely filed, however, it can no longer be maintained. Dismissal, not transfer is the proper response.

C. Exemption[2]
The Act provides in pertinent part:
(5) Any county which has prepared and adopted a district recycling plan as an amendment to the district solid waste management plan ... and the district recycling plan has been approved by the department prior to January 1, 1987 shall be exempt from the provisions of Sections 3 and 4 of this ... act. To be eligible for an exemption pursuant to this section, a county shall have established and implemented a county-wide mandatory source separation and recycling *630 program for at least three recyclable materials, in addition to leaves, and shall have demonstrated that it has secured markets for these materials.
Thus the requirement of "priority consideration" upon which Kohlbrenner relies, contained in section 3 of the act, does not apply to Burlington County if it has satisfied the exemption conditions. The County claims that it has. Kohlbrenner and Delran claim it has not. I conclude that they are correct.
The County has adopted a district recycling plan; it was approved by the DEP prior to January 1, 1987. Those requirements for exemption have therefore been met. The argument centers on the requirements remaining and their interpretation.
The intention of the Legislature in adopting the exemption provision seems obvious: to protect those county programs which were in existence before the act was adopted. Such plans could be disrupted if compliance with the provisions of sections 3 and 4 of the act, including "priority consideration," were mandated. A county, for example, bound to recycling contracts executed at an earlier time could be placed in the impossible position of having to comply with the contradictory terms of the contracts and the act. Hence, the exemption proviso, available, however, only to a county which has "established and implemented a ... program ... and ... demonstrated that it has secured markets for [3] ... materials," prior to January 1, 1987.
The County has provided the court with a lengthy history of its efforts looking to the establishment of a recycling plan, efforts which commenced in 1979. It contracted with the OTC in 1982 to collect newspapers, glass and cans. Since then it has been involved in planning for substantial recycling facilities requiring the acquisition of property, the construction of buildings, the purchase of equipment and the defense of extensive litigation. That planning while not complete, is nearly so.
The Delran property was acquired in 1985. It will accommodate a regional recycling facility now under construction and approximately one-third completed. OTC has been collecting *631 newspapers since 1983; over 5300 tons collected from 25 municipalities were recycled in 1985 alone. The OTC agreement, entered into on May 28, 1986, provides for the collection of glass and cans in addition to paper and charges OTC with the obligation of selling the recycled material. The County's recycling plan requires all municipalities in Burlington County to adopt mandatory source separation and recycling ordinances. A sample ordinance has been distributed. OTC has commenced the collection of glass and aluminum cans at recycling drop-offs in several municipalities, although it is not clear that this began prior to January 1, 1987. It is clear, however, that prior to that date 13 municipalities were collecting and disposing of at least 3 recyclable materials. Newspapers have been recycled by the County for some time; other materials were recycled only by municipalities before January 1, 1987.
These circumstances adequately prove that the County's "program," as required by the exemption provision of the act, has been "established and implemented." They do not provide the required market demonstration. The necessary analysis of the act follows.
The word "program" is not defined in the act. Delran suggests in its amicus brief that it must be defined to include all of the plan requirements contained in sections 3 and 4 of the act. This cannot be. The act clearly differentiates a "program" from a "plan." The "plan" referred to in sections 3, 4 and 5 is what the County adopted and the DEP approved on December 5, 1986. A "program" implements a "plan"; it is less than a "plan."
The County certainly has a "program" to carry forward its recycling plan. Unquestionably it "established" its program prior to January 1, 1987: the program was in place in part at least as early as 1982 and has been implemented in many ways ever since. The OTC 1982 and 1986 contracts are implementations, as is the beginning construction of the Delran plant and all of the other undertakings set forth above. The act does not *632 require a program to be completed, only "implemented." Implementation in gradual steps taken within a reasonable time suffices. A county which has made reasonably substantial and continuing implementation efforts has met the exemption requirements of the act insofar as implementation is concerned. Burlington County is one of those counties.
The act's remaining exemption requirement is that the County demonstrate that it has "secured markets" for at least three recyclable materials. Kohlbrenner and the OTC argue at length that the necessary showing has not been made. They are correct. The only marketing contract exhibited by the County is the OTC contract which requires the latter to find markets. But the OTC, little more than an alter ego of the County, cannot be the "market" to which the act refers. The OTC contract is only a step toward securing a market.
The act's exemption provision does not require market contracts by any express language. It requires only a demonstration that the County has "secured markets." The exhibition of market contracts could provide the demonstration but it cannot have been the intention of the Legislature to make that the exclusive proof since it did not say so. (This is particularly significant in view of the express marketing contract requirements set forth in section 4a & b of the act.[3]) It used the word "demonstrated," a word that wisely permits a variety of proofs. For example, a showing that markets, as defined in the act, are readily available to the County would be enough.
The County, however, has not provided the required demonstration. It is apparent that it has marketed paper for some *633 time. But there is no showing that it has a paper "market" which meets the act's definition:
"Market" or "markets" means the disposition of designated recyclable materials source separated in a municipality which entails a disposition cost less than the cost of transporting the recyclable materials to solid waste facilities and disposing of them as municipal solid waste at the facility utilized by the municipality.
The same is true as to other recyclable materials. As to them there is in fact no showing of any marketing arrangement  only negotiations and proof of some aluminum sales. Clearly, more proof is needed.
The requirement for markets is a central theme of the act. The transcript of the Public Hearing on Senate Bill # 1478 before the Senate Energy and Environment Committee, part of the legislative history of the act, reflects the marketing concerns of all participants, including environmentalists, industrialists and public officials. Mandatory municipal recycling arrangements become effective only after a county has executed marketing contracts. This is stressed in the Statement of the Assembly Committee on Environmental Quality to the Assembly and Senate Committee substitutes for Senate Bill # 1478 and Assembly Bill # 1781, which notes:
Even though the definition of "markets" has been expanded beyond its usual meaning, it should be emphasized that if a county fails to enter into any contracts or agreements to market specific designated recyclable materials, or is granted a temporary exemption from this requirement by the DEP pending the availability of markets for its recyclables, no municipality within that county would be required to adopt a mandatory recycling ordinance, except at its own discretion. Thus, the "mandatory" aspects of municipal recycling in the bill are predicated upon a "markets first" implementation strategy.
The County may be able to demonstrate that it has secured markets through proof that they are available to its municipalities. Thirteen Burlington County municipalities were collecting and disposing of at least 3 recyclable materials before January 1, 1987. Obviously, they have had markets in the sense that they found routes for the disposal of these materials. The fact that markets of some kind are available is demonstrated by Kohlbrenner's own marketing operations. But the court has *634 not been presented with any evidence that "markets," as defined in the act are available. If that can be shown, it is enough to meet the exemption requirement.
The County, on the basis of present proofs, has not satisfied the marketing criteria which are a condition to the allowance of the claimed exemption. It is entitled, however, to a plenary hearing on the marketing issue if further proceedings in this matter become necessary.
NOTES
[1] The County, as required by N.J.S.A. 13:1E-23, gave notice of the public hearing at which adoption of the recycling plan was to be considered. A principal of Kohlbrenner attended that hearing. It therefore had knowledge, not only of the plan, but also of the failure of the plan to provide any "priority consideration." Kohlbrenner raised no objection to the plan at the hearing or in writing afterward although time for written comment was provided. The filing of a written objection is a condition precedent to the commencement of any prerogative writ action challenging the plan. N.J.S.A. 13:1E-23(f). It is therefore doubtful that Kohlbrenner has the necessary standing for the maintenance of this action.
[2] Notwithstanding the above, it is this court's obligation to address the exemption issue. The jurisdictional and time bar conclusions may be appealed and reversed. In that event the appellate courts should be in a position to decide the entire controversy.
[3] Section 4a. requires the execution of marketing contracts six months after DEP approval of the recycling plan. It recognizes in section 4b, however, that a county may not be able to enter into such contracts and therefore provides for a temporary renewable exemption from that requirement. To get the exemption, a county must show that it "has made a good faith effort to identify and secure markets for its recyclable materials."